UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

                    Plaintiff,

          -v-

HEINZ GENTGES,

                    Defendant.

18 Civ. 7910 (KMK)

**MEMORANDUM OF LAW IN SUPPORT OF
THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2677
E-mail: samuel.dolinger@usdoj.gov

SAMUEL DOLINGER
Assistant United States Attorney
– Of Counsel –

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................1

BACKGROUND ......................................................................................................2

    A.    Regulatory Background: Required Disclosures of Foreign Financial Accounts Under the BSA...............................................................................2

    B.    Factual Background ......................................................................................3

        1.    The 4959 Account at UBS ...............................................................4

        2.    The 4337 Account at UBS ...............................................................5

        3.    Gentges's Withdrawals of Cash from the UBS Accounts ..........................6

        4.    Gentges's 2007 Tax Return ............................................................7

        5.    Gentges's Closure of the UBS Accounts ............................................8

        6.    IRS's Examination and Assessment of Civil Penalties...............................9

ARGUMENT ........................................................................................................10

I.    LEGAL STANDARDS .....................................................................................10

    A.    Summary Judgment .....................................................................................10

    B.    Willful Violations of the BSA's Foreign Account Disclosure Requirement........10

II.    THE UNDISPUTED EVIDENCE ESTABLISHES THAT HEINZ GENTGES IS LIABLE FOR WILLFULLY FAILING TO DISCLOSE HIS SWISS BANK ACCOUNTS AT UBS.......................................................................................13

    A.    Gentges Meets All Threshold Elements of an FBAR Violation..........................13

    B.    The Evidence Establishes that Gentges's FBAR Violation Was Willful .............13

        1.    Gentges Incorrectly Certified on His Tax Return That He Had No Foreign Financial Accounts in 2007 ..........................................14

        2.    Gentges Failed to Consult with Experts Regarding Disclosure Requirements, Tax Implications, or Otherwise with Respect to the UBS Accounts....................................................................16

        3.    Records from Gentges's UBS Accounts Indicate That His Conduct Was Willful....................................................................17

        4.    Gentges's Substantial Withdrawals of Cash from His UBS Accounts Demonstrate His Willfulness ....................................20

III.    THE AMOUNT OF THE FBAR PENALTY ASSESSED AGAINST GENTGES WAS PROPER ..............................................................................................23

CONCLUSION......................................................................................................24

i

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).........................................................................................10

*Anemone v. Metro. Transp. Auth.*,
    629 F.3d 97 (2d Cir. 2011).............................................................................10

*Bedrosian v. United States*,
    912 F.3d 144 (3d Cir. 2018)...........................................................................11

*Brown v. Eli Lilly & Co.*,
    654 F.3d 347 (2d Cir. 2011)...........................................................................10

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986).........................................................................................10

*Global-Tech Appliances, Inc. v. SEB S.A.*,
    563 U.S. 754 (2011).........................................................................................12

*Greer v. Comm'r*,
    595 F.3d 338 (6th Cir. 2010) .........................................................................14

*Gully v. Nat'l Credit Union Admin. Bd.*,
    341 F.3d 155 (2d Cir. 2003)...........................................................................24

*Hayman v. Comm'r*,
    992 F.2d 1256 (2d Cir. 1993).........................................................................14

*Karpova v. Snow*,
    497 F.3d 262 (2d Cir. 2007)...........................................................................24

*Kimble v. United States*,
    141 Fed. Cl. 373 (2018) ...................................................................12, 15, 22

*Lefcourt v. United States*,
    125 F.3d 79 (2d Cir. 1997).............................................................................11

*Matsushita Elec. Co. v. Zenith Radio Corp.*,
    475 U.S. 574 (1986).........................................................................................10

*Norman v. United States*,
    942 F.3d 1111 (Fed. Cir. 2019)...........................................................11, 20, 22

*Park v. Comm'r*,
    25 F.3d 1289 (5th Cir. 1994) .........................................................................14

*Safeco Ins. Co. of Am. v. Burr*,
    551 U.S. 47 (2007)...........................................................................................11

*Shannon v. N.Y.C. Transit Auth.*,
    332 F.3d 95 (2d Cir. 2003).............................................................................10

*Skouras v. United States*,
   26 F.3d 13 (2d Cir. 1994) ............................................................................ 12

*United States v. Bohanec*,
   263 F. Supp. 3d 881 (C.D. Cal. 2016) .................................................... 15, 17

*United States v. Clemons*,
   No. 18 Civ. 258, 2019 WL 7482218 (M.D. Fla. Oct. 9, 2019)...................... 23

*United States v. Doherty*,
   233 F.3d 1275 (11th Cir. 2000) .................................................................... 14

*United States v. Flume*,
   No. 16 Civ. 73, 2018 WL 4378161 (S.D. Tex. Aug. 22, 2018)...................... 23

*United States v. Flume*,
   390 F. Supp. 3d 847 (S.D. Tex. 2019) ..................................................... 15, 17

*United States v. Garrity*,
   304 F. Supp. 3d 267 (D. Conn. 2018)...................................................... 11, 12

*United States v. Horowitz*,
   361 F. Supp. 3d 511 (D. Md. 2019) ................................................... *passim*

*United States v. Kelley-Hunter*,
   281 F. Supp. 3d 121 (D.D.C. 2017) ............................................................. 12

*United States v. McBride*,
   908 F. Supp. 2d 1186 (D. Utah 2012)................................................ *passim*

*United States v. Olbres*,
   61 F.3d 967 (1st Cir. 1995)........................................................................... 14

*United States v. Ott*,
   No. 18 Civ. 12174, 2020 WL 913814 (E.D. Mich. Feb. 26, 2020) ............... 17

*United States v. Pomerantz*,
   No. 16 Civ. 689, 2017 WL 4418572 (W.D. Wash. Oct. 5, 2017) .................. 13

*United States v. Rum*,
   No. 17 Civ. 826, 2019 WL 3943250 (M.D. Fla. Aug. 2, 2019)................ *passim*

*United States v. Sturman*,
   951 F.2d 1466 (6th Cir. 1991) ................................................................ 12, 14

*United States v. Williams*,
   489 F. App'x 655 (4th Cir. 2012) ................................................ 11, 12, 14, 17

*United States v. Williams*,
   No. 09 Civ. 437, 2014 WL 3746497 (E.D. Va. June 26, 2014).................. 13, 23

*Weinstock v. Columbia Univ.*,
   224 F.3d 33 (2d Cir. 2000)........................................................................... 10

**STATUTES**

5 U.S.C. § 706 .................................................................................................. 13

31 U.S.C. § 3717 ............................................................................................ 3, 24

31 U.S.C. § 5314 ........................................................................................ 1, 2, 3

31 U.S.C. § 5316 .............................................................................................. 21

31 U.S.C. § 5321 .................................................................................... 1, 3, 9, 23

**RULES**

Fed. R. Civ. P. 5.2 .............................................................................................. 3

Fed. R. Civ. P. 56 ..................................................................................... 1, 10, 24

Fed. R. Evid. 803 ........................................................................................... 4, 5

Fed. R. Evid. 902 ........................................................................................... 4, 5

**REGULATIONS**

31 C.F.R. pt. 1010 .............................................................................................. 3

31 C.F.R. § 103.24 (2008) .............................................................................. 3, 13

31 C.F.R. § 103.27 (2008) ......................................................................... 3, 13, 23

**LEGISLATIVE MATERIALS**

H.R. Rep. No. 91-975 (1970) ............................................................................ 1

S. Rep. No. 108-192 (2003) .............................................................................. 1

Plaintiff the United States of America (the "United States" or the "government"), by its attorney, Geoffrey S. Berman, United States Attorney for the Southern District of New York, respectfully submits this memorandum of law in support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The United States filed this action against defendant Heinz Gentges to collect civil penalties assessed due to Gentges's willful failure to file the required report of foreign financial accounts commonly known as the "FBAR," pursuant to the Bank Secrecy Act ("BSA"), 31 U.S.C. §§ 5314 and 5321.  Congress passed the BSA to facilitate and monitor compliance with currency regulation and tax laws.  *See* H.R. Rep. No. 91-975, at 13 (1970), *reprinted in* 1970 U.S.C.C.A.N. 4394, 4397-98.  When Congress enacted the statute in 1970, and amended it in 2004, one of its objectives was to combat tax evasion and abusive tax schemes employing offshore bank accounts, particularly in jurisdictions with extensive bank secrecy laws, like Switzerland.  *See id.*; S. Rep. No. 108-192, at 108 (2003).

In 2007, Gentges maintained two numbered bank accounts at UBS AG ("UBS") in Switzerland.  The undisputed facts in the record establish that Gentges willfully failed to report his interest in the two UBS accounts in 2007, which held a combined value of more than $1.5 million at the end of that year.  As a result of this willful violation of the BSA, in 2016 the Internal Revenue Service ("IRS") assessed penalties against Gentges totaling $903,853, which have subsequently increased due to interest and statutory penalties.  The United States filed suit to collect these penalties in 2018.

On the record developed through discovery, it is undisputed that Gentges is a U.S. citizen who owned and controlled two Swiss accounts at UBS in 2007, and that they were foreign financial accounts holding a balance exceeding $10,000 (the reporting threshold) during that

year.  Moreover, the record includes numerous undisputed indications of Gentges's willfulness, including (a) his submission of a federal tax return in which he falsely stated that he had no foreign accounts in 2007; (b) his failure to consult with his accountant and trust adviser concerning disclosure requirements or tax consequences of the UBS accounts—or even to reveal the existence of the accounts to them; (c) his interactions with UBS, including signing an instruction preventing UBS from investing in U.S. securities on his behalf in order to "avoid disclosure of [his] identity to the US Internal Revenue Service," using a numbered bank account, instructing the bank to hold his mail in Switzerland rather than mailing it to him in New York, and moving his money sequentially to three other Swiss banks as each stopped dealing with U.S.-citizen customers; and (d) his largely unexplained withdrawals of more than more than one hundred thousand dollars in cash from his U.S. dollar-denominated UBS accounts.

In this civil proceeding, the United States can establish that Gentges's conduct was willful by demonstrating that he was at least reckless or willfully blind as to the FBAR disclosure requirement.  Based on the undisputed record, Gentges's failure to disclose the UBS accounts through FBAR filings was willful.  Moreover, the IRS's determination of the penalty amount was proper.  Thus, the United States' motion for summary judgment should be granted.

## BACKGROUND

### A.    Regulatory Background: Required Disclosures of Foreign Financial Accounts Under the BSA

Under the BSA, the Secretary of the Treasury may require United States persons to report certain transactions with foreign financial agencies.  *See* 31 U.S.C. § 5314.  The statute's implementing regulations in effect at the relevant time required "[e]ach person subject to the jurisdiction of the United States . . . having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" to report that interest for

2

each calendar year in which such relationship existed.  31 C.F.R. § 103.24 (2008).[1]  To fulfill

this requirement, a U.S. person was required file a Form TD F 90-22.1, Report of Foreign Bank

and Financial Accounts, also known as an "FBAR," by June 30 "of each calendar year with

respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar

year."  *Id.* § 103.27(c) (2008).

The government may assess civil penalties against a person who willfully fails to comply

with the reporting requirements of § 5314.  *See* 31 U.S.C. § 5321(a)(5).  Specifically, where

noncompliance is willful, § 5321(a)(5)(C) provides for a penalty up to the greater of $100,000 or

50% of the balance in the account at the time of the violation.  *Id.*  The penalty set forth under

§ 5321(a)(5)(C) is subject to interest and further penalties.  *See* 31 U.S.C. § 3717.

### B.    Factual Background

Gentges was at all relevant times a U.S. citizen, and resided in Hawthorne, New York, in

2007.  Declaration of Samuel Dolinger ("Dolinger Decl.") Ex. L ("Compl.") ¶¶ 11-12; Dolinger

Decl. Ex. M ("Answer") ¶¶ 11-12; Dolinger Decl. Ex. D ("Gentges Depo.") 14:10-15:10;

Dolinger Decl. Ex. F ("Gentges Aff.") ¶¶ 1, 9.  Gentges filed a U.S. tax return for tax year 2007,

among other years.  Compl. ¶ 11; Answer ¶ 11; Gentges Depo. 89:23-95:5; Gentges Aff. ¶ 16.

In 2007, Gentges had financial interests in two foreign financial accounts at UBS in

Switzerland, bearing numbers XXX-XXXX4959[2] (the "4959 Account") and XXXX-XX4337

(the "4337 Account").  Compl. ¶¶ 13-14, 25-26; Answer ¶¶ 13-14, 25-26; Gentges Depo. 126:1-

19.  The balance of both UBS accounts during that year was greater than $10,000.  Compl. ¶¶ 18,

---

[1] The relevant regulations have been amended since the time at issue and recodified at 31 C.F.R. pt. 1010.  The 2008 version of these regulations is available at https://www.govinfo.gov/ content/pkg/CFR-2008-title31-vol1/pdf/CFR-2008-title31-vol1-part103-subpartB.pdf.

[2] Pursuant to Fed. R. Civ. P. 5.2(a)(4), all but the last four digits of financial account numbers herein are redacted.

27; Answer ¶¶ 18, 27.  Gentges failed to file a timely FBAR to report his interest in the UBS

accounts in 2007.  Compl. ¶¶ 23, 30; Answer ¶¶ 23, 30.

     **1.**       **The 4959 Account at UBS**

In November 2001, Gentges signed documents to open the 4959 Account,[3] which was

opened as a numbered account rather than a "name account."[4]  Dolinger Decl. Ex. B ("UBS 4959

Records") at USA70-71.[5]  He identified himself as the beneficial owner of the 4959 Account and

listed his address in Hawthorne, New York.  *Id.* at USA69-70.  Gentges instructed UBS not to

invest in U.S. securities, and signed an instruction to UBS stating, "I would like to avoid

disclosure of my identity to the US Internal Revenue Service under the new tax regulations.  To

this end, I declare that I expressly agree that my account shall be frozen for all new investments

in US securities as from 1 November 2000."  *Id.* at USA50.  The instruction also acknowledged

that he was "liable to tax in the USA as a US person."  *Id.*; *see* Gentges Depo. 149:23-153:1.

Gentges instructed UBS to retain his mail related to the 4959 Account at the bank, for a

fee,[6] rather than having it mailed to his address in New York.  UBS 4959 Records at USA70.

---

[3] Gentges testified that he was living in Switzerland years earlier when he originally opened accounts at a predecessor bank, Bankverein Lyss, which later became part of UBS.  *See* Gentges Depo. 23:6-24:21, 68:16-69:4, 125:2-129:4.  The government assumes this is true for purposes of this motion, but submits that it is not material to the issues presented.

[4] At his deposition, Gentges said he did not believe he had checked the "numbered account" box on the form for the 4959 Account.  Gentges Depo. 133:15-135:3.  However, he did not dispute that the account was opened as a numbered account, which other documents that he signed confirm.  *See* UBS 4959 Records at USA62 (signed declaration acknowledging that Gentges was the "accountholder of the numbered account . . . noted above").

[5] The 4959 Account records were accompanied by a business records certification by UBS Legal Counsel Christoph Kurth.  *See* UBS 4959 Records at USA10, 14.  In light of the certification, these records are admissible and self-authenticating pursuant to Fed. R. Evid. 803(6) and 902(12).  For ease of reference, leading zeroes in Bates numbers have been omitted throughout.

[6] Gentges testified that he did not believe he had selected the hold-mail arrangement and that he did not know whether there was an associated fee, but he did not dispute that he usually received his UBS-related mail at the bank in Switzerland.  Gentges Depo. 138:4-140:24, 142:21-143:13.

Subsequently, when Gentges would visit the bank in Switzerland, including three visits in 2007, he retrieved his mail and authorized UBS to destroy the mail that he did not take with him.  *See id.* at USA124, 129, 136-37, 141, 144, 152, 159, 163.

Gentges also communicated with UBS bank personnel regularly to discuss the account and his investments, through in-person visits, telephone conversations, e-mails, and letters.  *See id.* at USA40-48.[7]  UBS often noted that correspondence was sent to Gentges at a "Swiss address" or via his son, who resides in Switzerland.  *See id.* at USA41 (note dated Jan. 21, 2004, stating that "all instructions go via [Gentges's] son," who "lives near Bern"); USA44 (note dated Oct. 10, 2006, indicating statements were sent to Gentges's son, per Gentges's request); USA45 (note dated Oct. 24, 2006, stating UBS sent "confirmation of last trades to the Swiss ad[d]ress"); USA46 (note dated Sept. 26, 2007, stating UBS sent "an investor guide to his [S]wiss address"); USA47 (notes dated Oct. 30, 2007, stating Gentges asked the bank to "send the confirmation for the last two orders by mail to his son[']s address in Switzerland," and Jan. 9, 2008, stating that Gentges requested bank balances, which were sent "by letter to his son in Switzerland").

According to UBS records, the balance of the 4959 Account in June 30, 2008—the deadline for the 2007 FBAR—was $1,358,730.01.  UBS 4959 Records at USA18.

## 2. The 4337 Account at UBS

In February 2002, Gentges signed documents to open the 4337 Account, which was also opened as a numbered account.  Dolinger Decl. Ex. C ("UBS 4337 Records") at D2154-55.[8]

---

[7] Translations of relevant documents (or portions thereof) originally in German are attached as Exhibit K to the Dolinger Declaration.  Additionally, UBS provided a second certification, by Christian Thut, UBS Director of Global Litigation, which addresses the client contact records in the Bates range of the UBS 4959 Records at USA40-48 and separately authenticates these records pursuant to Fed. R. Evid. 803(6) and 902(12).  *See* Dolinger Decl. Ex. J.

[8] This account document states at the top that the 4337 Account is a "Numbered account relationship," and does not use check-boxes.  *Id.* at D2154.  Gentges signed the document, *id.* at

Gentges identified himself as the beneficial owner of the 4337 Account and listed his address in Hawthorne, New York. *Id.* at D2154, 2168.  In documents regarding the 4337 Account, Gentges stated that he was "liable to tax in the USA as a US person," and agreed that the account would be "frozen for all new investments in US securities." *Id.* at D2160.

As with the 4959 Account, Gentges instructed UBS to retain his mail related to the 4337 Account at the bank, for a fee, rather than having it mailed to his address in New York. *Id.* at D2154.  And as he did with respect to the 4959 Account, Gentges retrieved his mail regarding the 4337 Account at the bank in Switzerland on a number of occasions and authorized UBS to destroy the mail that he did not take with him. *See id.* at D2173, 2183-86, 2189-91.

The balance for the 4337 Account at the end of 2007 was $448,975. *Id.* at D2267-68.[9]

### 3.    Gentges's Withdrawals of Cash from the UBS Accounts

UBS records reflect that Gentges withdrew approximately $140,000 worth of cash from the UBS accounts at issue between 2001 and 2007, in different currencies. *See* UBS 4959 Records at USA221, 226, 231, 244, 245, 248-50, 269, 275, 277, 312, 315, 318; UBS 4337 Records at D2210, 2212.[10]  Of that total, Gentges withdrew $116,560 from U.S. dollar-denominated sub-accounts of the UBS accounts. *See id.*[11]  The UBS contact records confirm

---

D2155.  Gentges also signed another document that acknowledges that he is the "accountholder of the numbered account . . . noted above." *Id.* at D2166.

[9] The UBS records do not reflect the balance of the 4337 Account on the deadline for the FBAR, on June 30, 2008.  Thus, the IRS used the balance at the end of 2007, $448,975, to calculate the FBAR penalty.  Dolinger Decl. Ex. I (FBAR Penalty Lead Sheet), at USA776.

[10] Currency conversions from Swiss francs and Euros to U.S. dollars were performed using the exchange rates in UBS annual statements for Gentges's accounts. *See* UBS 4337 Records at D2248, 2260, 2274, 2281, 2595.

[11] Gentges's UBS accounts each contained sub-accounts denominated in different currencies. *See id.*; *see also* UBS 4337 Records at D2275, 2618.  Gentges testified that his accounts were "mainly" denominated in U.S. dollars, Swiss francs, and Euros, though he may have at times had smaller holdings in other currencies as well.  Gentges Depo. 127:8-15.

Gentges's withdrawals in U.S. dollars on a number of these dates.  *See* UBS 4959 Records at USA40 (notes dated Dec. 6, 2001, reflecting "$17,000" withdrawal to be made at the end of 2001; Sept. 2, 2002, reflecting "9.5kUSD" withdrawal; and Nov. 8, 2002, reflecting "9k Cash" withdrawal), USA41 (note dated Aug. 4, 2003, reflecting "Cash withdrawal 10kUSD"); USA46 (notes dated June 5 and 8, 2007, reflecting "USD 10'000" withdrawal, and Sept. 26, 2007, reflecting "8' USD and 4' CHF [Swiss franc]" withdrawals).[12]

Additionally, in 2008 alone—leading up to the closure of Gentges's UBS accounts—Gentges withdrew approximately $100,000 worth of cash, in different currencies.  UBS 4959 Records at USA237, 238, 281, 283, 323.  Of that amount, he withdrew $83,033 from U.S. dollar-denominated sub-accounts.  *See id.*  Again, the UBS contact records corroborate certain withdrawals.  *See id.* at USA47 (note dated Sept. 25, 2008, indicating withdrawal of "aprox. [*sic*] USD 90/-) in several currencies (USD, CHF and EUR)").  Further, Gentges signed a letter requesting to withdraw "US $9.500" on February 29, 2008, which corresponds to a withdrawal on that date.  UBS 4337 Records at D2187; UBS 4959 Records at USA281.[13]

### 4.    Gentges's 2007 Tax Return

Gentges submitted a U.S. income tax return for 2007.  Dolinger Decl. Ex. G ("Gentges 2007 Tax Return"); Gentges Depo. 89:23-95:5.  He had the opportunity to review his returns after they were prepared by his tax preparer, Richard Surico.  Gentges Depo. 109:21-110:19.  Part III of Schedule B of the return asked him to state whether he had an interest in a foreign

---

[12] While Gentges initially expressed reservations at his deposition, he ultimately did not contest the accuracy of the UBS records showing these withdrawals.  *See* Gentges Depo. 174:10-177:25, 179:11-183:18, 185:12-190:11.

[13] Gentges's letter stated that he sought to withdraw $9,500, while the associated bank record shows a withdrawal of $9,595.  *See* UBS 4959 Records at USA281.  However, another U.S. dollar-denominated withdrawal record shows a withdrawal of $9,500 being augmented by a "premium" of $95, for a total debit of $9,595.  *See* UBS 4337 Records at D2210.

financial account in 2007.  Gentges 2007 Tax Return at D1725.  In particular, Part III of

Schedule B of Gentges's 2007 return read as follows:

| Part III | You must complete this part if you **(a)** had over $1,500 of taxable interest or ordinary dividends; or **(b)** had a foreign account; or **(c)** received a distribution from, or were a grantor of, or a transferor to, a foreign trust. | | Yes | No |
|---|---|---|---|---|
| **Foreign Accounts and Trusts** | **7a** At any time during 2007, did you have an interest in or a signature or other authority over a financial account in a foreign country, such as a bank account, securities account, or other financial account? See page B-2 for exceptions and filing requirements for Form TD F 90-22.1 | | | X |
| | **b** If "Yes," enter the name of the foreign country ▶ _____ | | | |
| 727501 11-08-07 | **8** During 2007, did you receive a distribution from, or were you the grantor of, or transferor to, a foreign trust? If "Yes," you may have to file Form 3520. See page B-2 | | | X |
| LHA   For Paperwork Reduction Act Notice, see Form 1040 instructions. | | | | Schedule B (Form 1040) 2007 |

*See id.*  Part III specifically states that a taxpayer "must complete this part if you . . . (b) had a

foreign account."  *Id.*  The instructions for Schedule B require the taxpayer to check "Yes" in

response to Question 7(a) if the filer taxpayer an "interest in or a signature or other authority

over a financial account in a foreign country."  *Id.*  If the "Yes" box is checked, Schedule B

directs the taxpayer to filing requirements for the FBAR, Form TD F 90-22.1.  *Id.*

Gentges's 2007 return incorrectly responded "No," indicating that he had no foreign

financial accounts during that year.  *Id.*  However, Gentges admitted at his deposition that the

answer (like a number of his prior returns) was incorrect, because in fact he had foreign accounts

at UBS in Switzerland in 2007.  Gentges Depo. 93:16-95:5.

**5.    Gentges's Closure of the UBS Accounts**

In September 2008, Gentges was informed by UBS personnel that he had to close his

UBS accounts by the end of the year.  Gentges Depo. 199:22-200:8; UBS 4959 Records at

USA47.[14]  Between September and November 2008, Gentges closed the UBS accounts and

transferred the funds to Migros Bank, another Swiss financial institution.  Compl. ¶¶ 32-34;

---

[14] UBS records state that bank personnel recommended that Gentges file an IRS Form W-9, *see* UBS 4959 Records at USA47, which would have disclosed his interest in the account to the IRS. The records and also state that Gentges was considering a "vol[untary] disclosure" at this time. *Id.*  Gentges disputed this at his deposition, however, *see* Gentges Depo. 197:18-201:15, so for purposes of this motion the government does not rely on this evidence.

Answer ¶¶ 32-34; UBS 4959 Records at USA47-48, 53-59; UBS 4337 Records at D2161; Gentges Depo. 202:1-13, 203:24-205:11.[15]  In November 2008, Gentges instructed that his retained UBS mail be sent to his son's address in Lyss, Switzerland.  UBS 4959 Records at USA48, 60; Gentges Depo. 205:1-14.

### 6.     IRS's Examination and Assessment of Civil Penalties

Gentges applied for informal voluntary disclosure to the IRS in June 2010.  Compl. ¶ 36; Answer ¶ 36; Gentges Depo. 201:3-9, 222:1-223:2.[16]  In connection with that disclosure, Gentges belatedly filed certain FBARs for years including 2007, which included both the 4959 Account and the 4337 Account at UBS.  Gentges Depo. 126:1-15, 225:10-227:4.  In 2013, Gentges opted out of the voluntary disclosure program.  Compl. ¶ 38; Answer ¶ 38.

On October 7, 2016,[17] the IRS assessed penalties totaling $903,853 against Gentges for his willful failure to comply with the FBAR filing requirements with respect to his UBS accounts for calendar year 2007, specifically a $679,365 penalty relating to the 4959 Account and a $224,488 penalty relating to the 4337 Account.  Dolinger Decl. Ex. A (IRS Assessment documents); Compl. ¶¶ 40-41; Answer ¶¶ 40-41.

---

[15] As discussed in greater detail below, Gentges later moved his funds to two additional Swiss banks, Raiffeisen Bank and Privatbank Von Graffenried.  *See* Gentges Depo. 228:18-230:9, 233:9-234:4.

[16] At certain times, the IRS has operated a "voluntary disclosure program specifically designed for taxpayers with exposure to potential criminal liability and/or substantial civil penalties due to a willful failure to report foreign financial assets and pay all tax due in respect of those assets." *See* IRS, Offshore Voluntary Disclosure Program, https://www.irs.gov/individuals/international-taxpayers/offshore-voluntary-disclosure-program.  The program "is designed to provide taxpayers," *inter alia*, "terms for resolving their civil tax and penalty obligations." *Id.*

[17] By statute, the IRS may assess FBAR penalties up to six years after the filing deadline.  *See* 31 U.S.C. § 5321(b)(1).  Here, however, on several occasions between December 2013 and August 2016, Gentges's representative agreed in writing to extend the time within which the agency may assess an FBAR penalty for 2007, ultimately extending the deadline until December 31, 2017. *See* Compl. ¶ 39; Answer ¶ 39.

9

**ARGUMENT**

I.   **Legal Standards**

A.     **Summary Judgment**

Summary judgment is appropriate if the moving party demonstrates that there is no genuine dispute of material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  The moving party bears the burden of showing that it is entitled to summary judgment.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).  "[T]he nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial."  *Shannon v. N.Y.C. Transit Auth.*, 332 F.3d 95, 99 (2d Cir. 2003) (citing *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *see also* Fed. R. Civ. P. 56(c)(1).

In reviewing a summary judgment motion, the Court construes the evidence "in the light most favorable to the non-movant and draw[s] all reasonable inferences in that party's favor." *Anemone v. Metro. Transp. Auth.*, 629 F.3d 97, 113 (2d Cir. 2011).  However, "unsupported allegations do not create a material issue of fact," *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000), and the existence of a factual dispute does not preclude summary judgment where "the evidence is merely colorable, or is not significantly probative," *Anderson*, 477 U.S. at 249 (citation omitted).  The nonmoving party may not rely solely on "conclusory allegations or unsubstantiated speculation" to defeat a motion for summary judgment, but instead "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact."  *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

B.     **Willful Violations of the BSA's Foreign Account Disclosure Requirement**

In civil enforcement of the BSA, to establish that an individual acted willfully, the government need only demonstrate that the defendant was reckless or willfully blind to his

10

obligations.  The Supreme Court has held that "where willfulness is a statutory condition of civil liability, we have generally taken it to cover not only knowing violations of a standard, but reckless ones as well."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 (2007); *see Lefcourt v. United States*, 125 F.3d 79, 83 (2d Cir. 1997) ("willfulness," in the context of a civil penalty for willfully failing to disclose information to the IRS, "requires only that a party act voluntarily in withholding requested information, rather than accidentally or unconsciously"); *Bedrosian v. United States*, 912 F.3d 144, 152 (3d Cir. 2018) (civil willfulness "often denotes that which is intentional, or knowing, or voluntary, as distinguished from accidental, and . . . is employed to characterize conduct marked by careless disregard whether or not one has the right so to act" (quotation marks omitted)).

Thus, reckless conduct suffices to establish willfulness for purposes of the FBAR, as several courts of appeals and a number of district courts have held.  *See Norman v. United States*, 942 F.3d 1111, 1115 (Fed. Cir. 2019); *Bedrosian*, 912 F.3d at 153; *United States v. Williams*, 489 F. App'x 655, 658, 660 (4th Cir. 2012); *United States v. McBride*, 908 F. Supp. 2d 1186, 1204-05 (D. Utah 2012); *see United States v. Garrity*, 304 F. Supp. 3d 267, 273 (D. Conn. 2018) (collecting cases).  "[A] a person commits a reckless violation of the FBAR statute by engaging in conduct that violates 'an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known.'"  *Bedrosian*, 912 F.3d at 153 (quoting *Safeco*, 551 U.S. at 68)).  "An improper motive or bad purpose is not necessary to establish willfulness in the civil context."  *McBride*, 908 F. Supp. 2d at 1204.

A willful violation of the FBAR disclosure requirements may also be shown through willful blindness.  "[A]cting with 'willful blindness' to the obvious or known consequences of one's action . . . satisfies a willfulness requirement in both civil and criminal contexts."

11

*McBride*, 908 F. Supp. 2d at 1205 (citing *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)).  This is because "persons who know enough to blind themselves to direct proof of critical facts in effect have actual knowledge of those facts."  *Global-Tech*, 563 U.S. at 766. Therefore, willfulness—including in the FBAR context—"'can be inferred from a conscious effort to avoid learning about reporting requirements.'"  *Williams*, 489 F. App'x at 658 (quoting *United States v. Sturman*, 951 F.2d 1466, 1476 (6th Cir. 1991)).

The government may prove willfulness through inference from conduct meant to conceal or mislead the government about sources of income or other financial information.  *Williams*, 489 F. App'x at 659; *Sturman*, 951 F.2d at 1476.  Willfulness may be shown by "circumstantial evidence and reasonable inferences drawn from the facts because direct proof of a taxpayer's intent is rarely available."  *McBride*, 908 F. Supp. 2d at 1205.  The government must make this showing by a preponderance of the evidence.  *Garrity*, 304 F. Supp. 3d at 270 (collecting cases).

Although the issue of willfulness sometimes presents a question of fact for a factfinder, "it does not present a jury question in every case."  *Skouras v. United States*, 26 F.3d 13, 14 (2d Cir. 1994) (addressing willfulness under a tax provision, 26 U.S.C. § 6672).  Thus, "[i]f the record justifies it, willfulness may be determined at the summary judgment stage."  *Id.* Accordingly, courts have resolved cases seeking to recover willful FBAR penalties on summary judgment.  *See, e.g.*, *United States v. Horowitz*, 361 F. Supp. 3d 511, 528-29 (D. Md. 2019), *appeal filed*, No. 19-1280 (4th Cir.); *United States v. Rum*, No. 17 Civ. 826, 2019 WL 3943250, at *8 (M.D. Fla. Aug. 2, 2019), *report and rec. adopted*, 2019 WL 5188325 (M.D. Fla. Sept. 26, 2019), *appeal filed*, No. 19-14464 (11th Cir.); *Kimble v. United States*, 141 Fed. Cl. 373, 384-86 (2018), *appeal filed*, No. 19-1590 (Fed. Cir.); *United States v. Kelley-Hunter*, 281 F. Supp. 3d 121, 124 (D.D.C. 2017).

The Court reviews *de novo* whether a defendant is liable for a penalty arising from his willful failure to fulfill the reporting requirements applicable to foreign accounts.  *See Horowitz*, 361 F. Supp. 3d at 522.  However, because the BSA gives the Secretary of the Treasury discretion as to the amount of the penalty, this Court reviews the agency's penalty assessment deferentially, and may overturn it only if the amount is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2)(A); *see Rum*, 2019 WL 3943250, at *9; *United States v. Williams*, No. 09 Civ. 437, 2014 WL 3746497, at *1 (E.D. Va. June 26, 2014).

## II.    The Undisputed Evidence Establishes That Heinz Gentges Is Liable for Willfully Failing to Disclose His Swiss Bank Accounts at UBS

### A.    Gentges Meets All Threshold Elements of an FBAR Violation

The undisputed evidence establishes that Gentges meets the threshold requirements for an FBAR violation.  *See* 31 C.F.R. §§ 103.24, 103.27 (2008); *United States v. Pomerantz*, No. 16 Civ. 689, 2017 WL 4418572, at *2 (W.D. Wash. Oct. 5, 2017) (listing elements of willful FBAR violation); *McBride*, 908 F. Supp. 2d at 1201.  As the uncontested record demonstrates, in 2007 Gentges (1) was a U.S. citizen who (2) had a financial interest in authority over a foreign financial account, which (3) had a balance exceeding $10,000 during that year.  *See* Gentges Aff. ¶ 9; Gentges Depo. 126:1-127:19; UBS 4959 Records at USA18; UBS 4337 Records at D2267; Compl. ¶¶ 11-14, 18, 25-27; Answer ¶¶ 11-14, 18, 25-27.

### B.    The Evidence Establishes that Gentges's FBAR Violation Was Willful

The undisputed evidence also establishes that Gentges's failure to disclose his ownership of the Swiss UBS accounts in 2007 was willful.

### 1. Gentges Incorrectly Certified on His Tax Return That He Had No Foreign Financial Accounts in 2007

Gentges submitted a U.S. income tax return for 2007. *See* Gentges 2007 Tax Return; Gentges Depo. 89:23-95:5. One portion of that return asked him to state whether he had an interest in a foreign financial account in 2007 and directed him to consult the FBAR filing requirements, but Gentges's return incorrectly indicated that he had no foreign financial accounts during that year. *See* Gentges 2007 Tax Return at D1725.

Gentges's incorrect certification that he had no foreign accounts in 2007 renders his failure to file an FBAR for that year willful. Courts have held that a question on a tax return regarding whether the taxpayer had foreign accounts is alone sufficient to put the defendant "on inquiry notice of the FBAR requirement," and the failure to read the return "constitutes willful blindness to the FBAR requirement." *Williams*, 489 F. App'x at 659; *accord Sturman*, 951 F.2d at 1477 (holding that "[i]t is reasonable to assume that a person who has foreign bank accounts would read the information specified by the government in tax forms," including language in Schedule B referring the taxpayer to FBAR filing requirements).

These cases are consistent with precedent from the Second Circuit, which holds that even a taxpayer who "claims to have signed [tax] returns without reading them" is "nevertheless . . . charged with constructive knowledge of their contents." *Hayman v. Comm'r*, 992 F.2d 1256, 1262 (2d Cir. 1993). Other circuits agree. *See, e.g.*, *Greer v. Comm'r*, 595 F.3d 338, 347 n.4 (6th Cir. 2010) ("A taxpayer who signs a tax return will not be heard to claim innocence for not having actually read the return, as he or she is charged with constructive knowledge of its contents."); *United States v. Doherty*, 233 F.3d 1275, 1282 n.10 (11th Cir. 2000); *United States v. Olbres*, 61 F.3d 967, 971 (1st Cir. 1995); *Park v. Comm'r*, 25 F.3d 1289, 1299 (5th Cir. 1994).

14

For similar reasons, courts have relied on incorrect certifications on Schedule B of an individual's tax return in granting summary judgment to the government in FBAR cases. For instance, a court recently concluded an individual's negative response to "Question 7(a) on her 2007 income tax return, falsely representing under penalty of perjury, that she had no foreign bank accounts," along with the fact that she failed to "review her individual income tax returns for accuracy," constituted "conduct . . . that exhibited "a 'reckless disregard' of the legal duty" to file an FBAR to report an account at UBS. *Kimble*, 141 Fed. Cl. at 385-86. Another held that the defendants were "at least reckless, if not willfully blind, in their conduct with respect to their Swiss UBS account and their reporting obligations regarding the account," in part because "Part III of Schedule B of Defendants' . . . tax return put them on notice that they needed to file an FBAR." *United States v. Bohanec*, 263 F. Supp. 3d 881, 890 (C.D. Cal. 2016); *see United States v. Flume*, 390 F. Supp. 3d 847, 857 (S.D. Tex. 2019) (observing that "Schedule B's question about foreign bank accounts is simple and straightforward and requires no financial or legal training to understand," and concluding that a taxpayer acts with "extreme recklessness by failing to review his tax returns before signing them").

In yet another case, the court held that taxpayers' "failure to review their tax returns for accuracy despite repeatedly signing them, along with 'falsely representing under penalty of perjury' that they do not have a foreign bank account . . . *in and of itself* supports a finding of 'reckless disregard' to report under the FBAR." *Rum*, 2019 WL 3943250, at *8 (emphasis in original); *accord Horowitz*, 361 F. Supp. 3d at 528-29 (finding reckless disregard for FBAR requirement on summary judgment where taxpayers incorrectly stated on their tax returns that they had no foreign accounts); *McBride*, 908 F. Supp. 2d at 1208 (defendant was "charged with

having had knowledge of the FBAR requirement to disclose his interest in any foreign financial or bank accounts" by having signed federal income tax returns).

Gentges's tax returns directly inquired whether he had a foreign account and directed him to the FBAR form, Form TD F 90-22.1.  *See* Gentges 2007 Tax Return at D1725.  Gentges's returns wrongly indicated that he did not have any foreign accounts, despite his knowledge of the UBS accounts in Switzerland during that year.  *See id.*; Gentges Depo. 93:16-95:5.  Gentges was thus put on notice of the FBAR disclosure requirement by his 2007 tax return but failed to comply with this legal obligation.  His conduct was at least reckless (or, alternatively, willfully blind) as to the requirement to disclose the account.  This renders Gentges's failure to disclose the UBS accounts by filing a timely FBAR willful as a matter of law.

### 2. Gentges Failed to Consult with Experts Regarding Disclosure Requirements, Tax Implications, or Otherwise with Respect to the UBS Accounts

Many other undisputed indicia also demonstrate that Gentges's failure to disclose his Swiss accounts was willful.  Gentges employed the same accountant, Richard Surico, to prepare his tax returns for decades leading up to tax year 2007.  Gentges Depo. 55:22-56:6, 89:23-92:21; Dolinger Decl. Ex. E ("Surico Depo.") 35:5-22.  Despite this long-term professional relationship with Surico, Gentges never disclosed the existence of the UBS accounts to his accountant. Gentges Depo. 76:11-25, 111:14-112:3; Surico Depo. 74:23-76:11.  Nor did he seek Surico's advice about the income he received from the UBS accounts.  Gentges Depo. 76:11-25.

Additionally, in 2003, Gentges and his wife formed trusts for estate planning purposes, into which they transferred the ownership of their home in New York and all of their U.S. accounts.  Gentges Depo. 97:2-100:22; Dolinger Decl. Ex. H (Certificate of Trust).  However, despite hiring and consulting with an attorney to form the trust, Gentges did not (i) transfer the UBS accounts into the trust; (ii) disclose the existence of the UBS accounts to the attorney he

16

retained to form the trusts, or (iii) seek any advice about the UBS accounts, either from the attorney or anyone else.  Gentges Depo. 100:24-101:25, 112:12-16.

A number of courts have concluded in FBAR cases that the fact that a defendant "fail[ed] to discuss his foreign investments with his long-time accountant"—as Gentges did here—supports a finding of willfulness.  *United States v. Ott*, No. 18 Civ. 12174, 2020 WL 913814, at *6 (E.D. Mich. Feb. 26, 2020); *accord Rum*, 2019 WL 3943250, at *11 (willfulness supported by defendant's "admi[ssion] that he never told [his] tax preparer . . . about his foreign bank account"); *Flume*, 390 F. Supp. 3d at 857 ("a defendant's failure to inform his accountant about the existence of a foreign account is a strong indicator of a conscious intent to violate the law"); *Bohanec*, 263 F. Supp. 3d at 890 (finding recklessness or willful blindness because the defendants "never told anyone other than their children of the existence of the UBS account, including the tax preparers [they] hired to help them file tax returns," and "never asked a lawyer, accountant, or banker about requirements regarding the UBS account"); *McBride*, 908 F. Supp. 2d at 1212 (defendant's "failure to disclose all relevant information to [his accountant] is evidence of his willfulness, or at least his reckless disregard, of the potential consequences of failing to comply with the FBAR requirements"); *see Horowitz*, 361 F. Supp. 3d at 529 (holding that defendants' failure to consult with "accountants they entrusted with their taxes for years, notwithstanding the requirement that taxpayers with foreign accounts complete Part III of Schedule B, easily shows 'a conscious effort to avoid learning about reporting requirements.' (quoting *Williams*, 489 F. App'x at 658)).

### 3.   Records from Gentges's UBS Accounts Indicate That His Conduct Was Willful

Banking records from Gentges's UBS accounts also indicate that his failure to disclose the accounts was willful.  As described above, he signed bank forms acknowledging that he was

"liable to tax in the USA as a US person."  UBS 4959 Records at USA50; UBS 4337 Records at D2160.  In one of the instructions he signed, Gentges expressly stated that he "would like to avoid disclosure of [his] identity to the US Internal Revenue Service under the new tax regulations," and that he "declare[d] that [he] expressly agree[d] that [his] account shall be frozen for all new investments in US securities as from 1 November 2000."  UBS 4959 Records at USA50.  Despite these clear indications that there were potential consequences of the UBS accounts for U.S. tax liability or otherwise under U.S. laws and regulations, Gentges did not disclose the accounts to U.S. authorities, pay U.S. taxes on the income from the accounts, or even investigate further by consulting with accounting or legal professionals.[18]

Furthermore, Gentges's UBS accounts were opened as "numbered accounts" rather than "name accounts."  UBS 4959 Records at USA70; UBS 4337 Records at D2154.[19]  At his deposition, Gentges acknowledged he was familiar with the concept of the numbered account as a device for "people trying to hide money in Switzerland or anyplace else," and that Switzerland was known as a place where one could "put [money] in an account where no name was associated with it."  Gentges Depo. 135:4-136:11.

Next, UBS retained Gentges's mail related to both of his accounts at the bank in Switzerland, for a fee, rather than mailing to him in the United States.  UBS 4959 Records at USA70; UBS 4337 Records at D2154.[20]  Gentges retrieved his mail when he visited the bank in Switzerland—including on three visits in 2007 alone—and he authorized UBS to destroy any

_____

[18] As noted above, Gentges later disclosed the accounts to the IRS as part of a voluntary disclosure in 2010.

[19] As noted previously, Gentges testified that the account opening form for the 4959 Account was written in his handwriting, but said he did not believe he had checked the "numbered account" box on the form.  Gentges Depo. 133:15-135:3.

[20] As stated above, Gentges testified he was unaware of the fees associated with the retained mail service.  Gentges Depo. 142:21-143:13.

mail he did not take with him.  UBS 4959 Records at USA124, 129, 136-37, 141, 144, 152, 159, 163; UBS 4337 Records at D2173, 2183-86, 2189-91.  Furthermore, UBS regularly sent mail to Gentges via a "Swiss address" or through his son, who resides in Switzerland, and often did so expressly at Gentges's request.  *See supra* Background Section B.1.  And when Gentges closed his UBS accounts in 2008, he instructed that his retained UBS mail be sent to his son's address in Lyss, Switzerland, rather than to his home in New York.  Gentges Depo. 203:22-205:14; UBS 4959 Records at USA48, 60.

Furthermore, Gentges testified that in 2008—after UBS informed him that he was required to close his accounts—he did not consider moving the funds into the United States. Gentges Depo. 199:22-200:8, 206:7-15.  Rather, he moved the money to Migros Bank, another financial institution based in Switzerland.  *Id.* 206:20-207:11, 229:18-24.[21]  Then several years later, when Migros Bank advised Gentges that he had to close his account there because they were "not doing business anymore with American citizen[s]," *id.* 218:9-16, he still did not move his money back into the United States.  Instead, he moved it to Raiffeisen Bank, another Swiss bank, which he chose because it was one of the few remaining Swiss banks that would deal with U.S.-citizen customers.  *Id.* 228:18-230:9.  This happened a third time when Raiffeisen Bank also stopped dealing with U.S. customers in around 2012, and Gentges moved his money to yet another Swiss bank, Privatbank Von Graffenried, despite the fact that its fees were "quite a bit more expensive."  *Id.* 233:9-234:4.  Thus, despite repeated closures of Gentges's Swiss bank accounts, a dwindling number of Swiss banks willing to do business with U.S. citizens, and increasing banking fees, Gentges nonetheless chose to continue transferring his money among

---

[21] For Migros Bank and the subsequent Swiss banks where Gentges maintained accounts, Gentges testified that he filled out Forms W-9.  Gentges Depo. 196:16-197:4.

various Swiss banks rather than bringing it to the United States, where he lived.

A number of courts considering FBAR cases have concluded that similar actions by defendants who control foreign accounts support a finding of willfulness, including in other cases involving UBS accounts in Switzerland.  For instance, the Federal Circuit held that willfulness was supported, *inter alia*, by the fact that a defendant "opened her foreign [UBS] account as a 'numbered account'" and "signed a document preventing UBS from investing in U.S. securities on her behalf"—steps that "had the effect of inhibiting disclosure of the account to the IRS."  *Norman*, 942 F.3d at 1116.  Similarly, another court held that willfulness was shown by fact that defendant "owned a 'numbered' rather than a 'name account' and elected to have his UBS mail withheld abroad."  *Rum*, 2019 WL 3943250, at *8.  Gentges's conduct reveals these indicia of willfulness, and more, as set forth above.

### 4.    Gentges's Substantial Withdrawals of Cash from His UBS Accounts Are Further Evidence of Willfulness

Gentges withdrew hundreds of thousands of dollars' worth of cash from his UBS accounts.  *See supra* Background Section B.3.  Gentges's cash withdrawals from the UBS accounts are reflected in the following chart:

| Bates Number | Date | Amount | Account Currency |
|---|---|---|---|
| USA244 | 7/23/2001 | $17,675 | USD |
| USA245 | 11/20/2001 | $7,070 | USD |
| USA245 | 12/28/2001 | $17,170 | USD |
| USA248 | 9/2/2002 | $9,595 | USD |
| USA250 | 11/8/2002 | $9,045 | USD |
| USA249 | 8/3/2003 | $10,050 | USD |
| USA221 | 8/10/2004 | CHF 1,000 | Swiss Francs |
| USA312 | 8/10/2004 | €4,040 | Euros |
| USA315 | 8/30/2005 | €2,000 | Euros |
| D2210 | 11/25/2005 | $9,595 | USD |

| USA226 | 8/11/2006 | CHF 2,000 | Swiss Francs |
| USA269 | 11/13/2006 | $18,180 | USD |
| USA318 | 11/13/2006 | €1018.84 | Euros |
| D2212 | 11/13/2006 | CHF 12,000 | Swiss Francs |
| USA275 | 6/8/2007 | $10,100 | USD |
| USA231 | 9/26/2007 | CHF 4,000 | Swiss Francs |
| USA277 | 9/26/2007 | $8,080 | USD |
| USA237 | 2/29/2008 | CHF 4,000 | Swiss Francs |
| USA281 | 2/29/2008 | $9,595 | USD |
| USA238 | 9/19/2008 | CHF 6,000 | Swiss Francs |
| USA238 | 9/25/2008 | CHF 2,300 | Swiss Francs |
| USA283 | 9/25/2008 | $73,438 | USD |
| USA323 | 9/25/2008 | €5,050 | Euros |

As the chart demonstrates, Gentges made most of the larger cash withdrawals from U.S. dollar-denominated sub-accounts of the UBS accounts, often in amounts around $10,000. Indeed, about half of the U.S. dollar-denominated withdrawals were in amounts between slightly more than $9,000 and slightly more than $10,000. Gentges acknowledged he was aware that U.S. law required him to declare the transportation of currency exceeding $10,000 into the United States. Gentges Depo. 183:19-184:9; *see* 31 U.S.C. § 5316(a)-(b).

Gentges was unable to explain these U.S.-dollar cash withdrawals at his deposition.[22] He testified that the only reasons he would take out money of the UBS account would be "to stay in a hotel," and otherwise for "the cost of living" while staying in Europe, or to give gifts to family members in Europe. Gentges Depo. 168:7-173:3. But withdrawals for those reasons, he said, would be in Swiss francs or Euros, not dollars. *Id.* 170:13-174:25. Indeed, the withdrawals from

---

[22] The withdrawals are also in considerable tension with Gentges's sworn statement to the IRS in 2010 that he "never withdrew funds from [his] UBS account." Gentges Aff. ¶ 15.

the Swiss franc- or Euro-denominated sub-accounts between 2001 and 2007 are mostly in smaller amounts, between 1,000 and 4,000 Swiss francs or Euros, which would be more consistent with such uses.  Gentges provided no cogent rationale for his cash withdrawal more than $116,000 from U.S. dollar-denominated sub-accounts between 2001 and 2007, and tens of thousands more in 2008.[23]  Rather, he ultimately conceded that it was possible that he had withdrawn hundreds of thousands of dollars' worth of cash from the UBS accounts between 2001 and 2008.  Gentges Depo. 177:7-25, 179:11-183:18, 185:12-190:11.

Gentges's repeated withdrawals of significant amounts of cash from his UBS accounts, and in particular from the U.S. dollar-denominated sub-accounts, are further evidence of his willfulness, as movements of cash are less likely to result in disclosure of the account to U.S. authorities.  *See Norman*, 942 F.3d at 1113, 1116 (concluding that cash withdrawal from a UBS account was evidence of willfulness because cash withdrawal "helped to prevent disclosure of the foreign account to the IRS").

\*     \*     \*

For all these reasons, the undisputed evidence establishes that Gentges's failure to disclose the UBS accounts was willful.  The record demonstrates Gentges's his conduct was at least reckless as to the FBAR disclosure requirements or, alternatively, evinces his willful blindness to his legal obligations.  *See Horowitz*, 361 F. Supp. 3d at 528-29; *Rum*, 2019 WL 3943250, at \*7-8 *Kimble*, 141 Fed. Cl. at 385-86.[24]

---

[23] As noted above, at his deposition Gentges initially expressed doubt about whether he would have withdrawn the amounts of cash reflected in the UBS records.  *See* Gentges Depo. 174:10-177:7.  However, on review of the records, Gentges conceded that, while he did not remember the specific dates or amounts, the withdrawals were conceivable, and he ultimately accepted the accuracy of the UBS account records.  *Id.* 177:7-25, 179:11-183:18, 185:12-190:11.

[24] While certain FBAR cases have concluded that fact questions precluded summary judgment, the government respectfully submits that they are distinguishable.  For instance, in one case, a

**III.    The Amount of the FBAR Penalty Assessed Against Gentges Was Proper**

The IRS's decision to assess a penalty of $903,853 against Gentges for his failure to disclose the two UBS accounts was proper.  Congress specified that the agency may impose penalties for willful failure to comply with the reporting requirement, up to the greater of $100,000 or 50% of the balance in the account at the time of the violation.  31 U.S.C. § 5321(a)(5)(C).  The "time of the violation" is June 30, 2008, the deadline by which Gentges was required to file the FBAR for the UBS accounts for 2007.  *See* 31 C.F.R. § 103.27 (2008).

Here, the IRS assessed $679,365 in penalties against Gentges for the 4959 Account, and $224,488 in penalties for the 4337 Account.  *See* Dolinger Decl. Ex. I ("FBAR Penalty Lead Sheet") at USA793-94.  These amounts represent 50% of the relevant account balances of $1,358,730.01 in June 2008 for the 4959 Account, and $448,975 in December 2007 for the 4337 Account.  UBS 4959 Records at USA18; UBS 4337 Records at D2267-68.[25]

As noted above, judicial review of the amount of an FBAR penalty is limited to a determination of whether the IRS set the amount arbitrarily and capriciously or abused its discretion in doing so.  *See Rum*, 2019 WL 3943250, at *9; *Williams*, 2014 WL 3746497, at *1.

---

district court denied summary judgment, in part, because the defendant testified he had disclosed the foreign account to his tax preparer and asserted he had "relied on his tax preparer's competence in preparing" his tax returns."  *United States v. Flume*, No. 16 Civ. 73, 2018 WL 4378161, at *6, *9 (S.D. Tex. Aug. 22, 2018).  By contrast, Gentges concedes (and his accountant agrees) that he never disclosed the UBS accounts to the accountant or sought his advice about taxation or regulatory requirements.  *See supra* Section II.B.2.  In another case, the court denied summary judgment in part because the defendant "answered yes to question 7(a) on Schedule B specifically disclosing he had interests in foreign financial accounts in 2008, 2009, and 2010," but did not file a timely FBAR.  *United States v. Clemons*, No. 18 Civ. 258, 2019 WL 7482218, at *8 (M.D. Fla. Oct. 9, 2019).  Here, by contrast, Gentges incorrectly answered "no" to the question on the return regarding foreign accounts.  *See supra* Section II.B.1.

[25] As noted above, a June 2008 balance was unavailable for the 4337 Account, so the IRS used the year-end 2007 balance to calculate the penalty for that account.  *See* FBAR Penalty Lead Sheet at USA776, 793.  Additionally, the IRS rounded the penalty for the 4337 Account up to the nearest dollar, as it would have otherwise been $224,487.50.

Such review "is narrow and particularly deferential," *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155, 163 (2d Cir. 2003), and "courts should not substitute their judgment for that of the agency," *Karpova v. Snow*, 497 F.3d 262, 267 (2d Cir. 2007).  Rather, the Court's task is "to determine whether the agency has considered the pertinent evidence, examined the relevant factors, and articulated a satisfactory explanation for its action including whether there is a rational connection between the facts found and the choice made."  *Gully*, 341 F.3d at 163 (quotation marks omitted).

Here, the IRS examiner's report—which was sent to Gentges, via his counsel, during administrative proceedings before this action was commenced—sets forth the rational connection between the IRS's findings of Gentges's willfulness, the relevant UBS account balances, and the 50% penalties that the agency chose to assess.  *See generally* FBAR Penalty Lead Sheet.  The IRS's determination here is not arbitrary and capricious, and the Court should therefore uphold the assessed penalties.

## CONCLUSION

For the foregoing reasons, the Court should grant summary judgment in favor of the United States of America pursuant to Rule 56 of the Federal Rules of Civil Procedure, and enter judgment against Heinz Gentges in the amount of $903,853, plus interest and statutory penalties that have accrued pursuant to 31 U.S.C. § 3717 since October 7, 2016.

Dated: April 30, 2020
       New York, New York

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York

By:    /s/ Samuel Dolinger
SAMUEL DOLINGER
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:  (212) 637-2677
E-mail: samuel.dolinger@usdoj.gov