UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

Plaintiff,

18 Civ. 7910 (KMK)

-v-

HEINZ GENTGES,

Defendant.

**AMENDED REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF
THE UNITED STATES OF AMERICA'S MOTION FOR SUMMARY JUDGMENT**

AUDREY STRAUSS
Acting United States Attorney
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2677
E-mail: samuel.dolinger@usdoj.gov

SAMUEL DOLINGER
Assistant United States Attorney
– Of Counsel –

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...........................................................................................1

ARGUMENT ....................................................................................................................2

I.  GENTGES'S ARGUMENTS ABOUT THE WILLFULNESS STANDARD ARE
    UNAVAILING ..........................................................................................................2

II.  THE UNDISPUTED EVIDENCE ESTABLISHES GENTGES'S WILLFUL
     VIOLATION OF THE BSA ......................................................................................3

     A.  Gentges's 2007 Tax Return Falsely Denied He Maintained Foreign
         Accounts ....................................................................................................3

     B.  Gentges Recklessly Failed to Consult His Accountant or Trust Advisor
         About Regulatory Requirements for His Swiss Accounts ...............................5

     C.  Gentges's UBS Records Demonstrate His Intent to Avoid IRS Scrutiny, or
         at Least, Gave Him a Duty to Inquire as to Regulatory Requirements..............6

     D.  Gentges's Numerous Cash Withdrawals, Many in U.S. Dollars, Are
         Further Confirmation of His Willfulness .....................................................7

III.  THE UBS BANKERS' CLIENT CONTACT NOTES ARE ADMISSIBLE, AND
      IN ANY EVENT ARE NOT NECESSARY TO AWARD SUMMARY
      JUDGMENT TO THE UNITED STATES ..................................................................8

IV.  IRS ASSESSED APPROPRIATE PENALTIES FOR GENTGES'S WILLFUL
     FBAR VIOLATIONS ..............................................................................................10

CONCLUSION.................................................................................................................10

# TABLE OF AUTHORITIES

## CASES

*Aboied v. Saudi Arabian Airlines Corp.*,
   566 F. App'x 34 (2d Cir. 2014) ............................................................................... 7

*Baity v. Kralik*,
   51 F. Supp. 3d 414 (S.D.N.Y. 2014).......................................................................... 3

*Bedrosian v. United States*,
   912 F.3d 144 (3d Cir. 2018)................................................................................. 3, 6

*Brown v. Henderson*,
   257 F.3d 246 (2d Cir. 2001)...................................................................................... 7

*Delaney v. Bank of Am. Corp.*,
   766 F.3d 163 (2d Cir. 2014)...................................................................................... 8

*Harrington v. Comm'r*,
   No. 13531-18 (T.C. Feb. 7, 2020) ............................................................................ 9

*Hayman v. Comm'r*,
   992 F.2d 1256 (2d Cir. 1993).................................................................................... 4

*House v. Wackenhut Servs.*,
   No. 10 Civ. 9476 (CM) (FM), 2012 WL 4017334 (S.D.N.Y. Aug. 20, 2012).......... 2

*Major League Baseball Properties, Inc. v. Salvino, Inc.*,
   542 F.3d 290 (2d Cir. 2008)...................................................................................... 8

*McCracken v. Best Buy Stores, L.P.*,
   248 F.R.D. 162 (S.D.N.Y. 2008) .............................................................................. 5

*Norman v. United States*,
   942 F.3d 1111 (Fed. Cir. 2019)......................................................................... 2, 3, 4

*Residents for Sane Trash Sols., Inc. v. Army Corps of Eng'rs*,
   31 F. Supp. 3d 571 (S.D.N.Y. 2014)....................................................................... 10

*S.G. v. Success Acad. Charter Sch., Inc.*,
   No. 18 Civ. 2484 (KPF), 2019 WL 1284280 (S.D.N.Y. Mar. 20, 2019) .................. 2

*Skouras v. United States*,
   26 F.3d 13 (2d Cir. 1994).......................................................................................... 2

*United States v. Clemons*,
   No. 18 Civ. 258, 2019 WL 7482218 (M.D. Fla. Oct. 9, 2019).................................. 5

*United States v. Flume*,
   390 F. Supp. 3d 847 (S.D. Tex. 2019) ................................................................... 4, 6

*United States v. Flume*,
   No. 16 Civ. 73, 2018 WL 4378161 (S.D. Tex. Aug. 22, 2018)................................. 6

*United States v. Johnson*,
   971 F.2d 562 (10th Cir. 1992) ........................................................................... 9

*United States v. McBride*,
   908 F. Supp. 2d 1186 (D. Utah 2012).............................................................. 2

*United States v. Rem*,
   38 F.3d 634 (2d Cir. 1994)................................................................................. 2

*United States v. Williams*,
   489 F. App'x 655 (4th Cir. 2012) ...................................................................... 4

**RULES**

Fed. R. Evid. 803 ....................................................................................................... 8, 9

Fed. R. Evid. 902 ....................................................................................................... 8, 9

The United States,[1] by its attorney, Audrey Strauss, Acting United States Attorney for the Southern District of New York, respectfully submits this amended reply memorandum[2] in further support of its motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The Court should grant summary judgment to the United States. The undisputed record establishes Gentges's willfulness in failing to report his numbered Swiss bank accounts at UBS in 2007, as the Bank Secrecy Act required.

Gentges does not dispute any of the elements of the FBAR violation other than willfulness. In civil BSA cases, willfulness encompasses recklessness and willful blindness, which are more than established by the evidence here. While Gentges does not contest the applicable legal standard, his brief broadly argues that he did not *intend* to violate U.S. law. Even assuming *arguendo* this is true, however, it is insufficient to preclude summary judgment in the government's favor.

The evidence here—including Gentges's tax returns, which falsely stated he had no foreign accounts; his failure to consult with his longtime accountant about the Swiss accounts; and the unusual management of the UBS accounts, including Gentges's instructions to the bank to avoid disclosing his identity to the IRS, using numbered bank accounts, having his mail held at the bank in Switzerland, and withdrawing large amounts of cash—is more than sufficient to establish that Gentges was reckless or willfully blind as to BSA's requirement that he disclose

---

[1] Unless otherwise noted, defined terms herein have the same meanings assigned to them in the government's opening brief, Dkt. No. 30 ("Gov't Br.").

[2] As stated in the government's letter dated July 28, 2020, Dkt. No. 43, this amended reply contains minor corrections and changes responsive to revisions made in Gentges's corrected brief, Dkt. No. 42.

his Swiss UBS accounts by filing an FBAR in 2007. Because the government has demonstrated Gentges's willfulness, as well as the propriety of the assessed penalty amounts, the United States' motion for summary judgment should be granted.

## ARGUMENT

### I.   Gentges's Arguments About the Willfulness Standard Are Unavailing

Willfulness "does not present a jury question" in this case, because the "record justifies" a grant of summary judgment to the government. *Skouras v. United States*, 26 F.3d 13, 14 (2d Cir. 1994). The undisputed evidence discussed in the government's opening brief and reviewed below establishes that Gentges's failure to submit an FBAR was reckless or willfully blind. *See, e.g.*, *Norman v. United States*, 942 F.3d 1111, 1115-17 (Fed. Cir. 2019); *United States v. McBride*, 908 F. Supp. 2d 1186, 1204-05 (D. Utah 2012).

Gentges cites *United States v. Rem* for the contrary proposition, *see* Dkt. No. 42 ("Def. Br.") at 12-13, but it is inapposite. *Rem* considered whether a defendant's failure to pay employee withholding taxes was willful. 38 F.3d 634, 642-46 (2d Cir. 1994).[3] While the court ruled that question could not be resolved on summary judgment, the standard of willfulness applied in *Rem* is stricter than the standard under the BSA. The "principal component of willfulness" under 26 U.S.C. § 6672, the statute at issue in *Rem*, "is *knowledge*: a responsible person acted willfully within the meaning of § 6672(a) if he (a) *knew of the company's obligation to pay withholding taxes*, and (b) knew that company funds were being used for other purposes instead." *Id.* at 643 (emphases added).

---

[3] Also at issue in *Rem* was whether the defendant was a "responsible person" for the company's failure to remit withholding taxes under 26 U.S.C. § 6672, which hinges on "whether the individual has significant control over the enterprise's finances." *Rem*, 38 F.3d at 642 (emphasis and quotation marks omitted). Here, it is undisputed that Gentges owned and had control over the UBS accounts. *See, e.g.*, Dkt. No. 38 ("Def. 56.1 Stmt.") ¶¶ 7, 16.

Under the BSA, by contrast, the government need not show that the defendant knew of his obligation to file an FBAR. Rather, as Gentges concedes, willfulness under the BSA "includes both knowing and reckless conduct." Def. Br. at 13. Thus, Gentges misstates the law in contending that "the relevant inquiry" is whether his failure to disclose the UBS accounts "was purposeful instead of inadvertent or innocent." *Id.* Plainly, the law does not require the United States to show *purposeful* failure to file an FBAR. *See Norman*, 942 F.3d at 1115 (rejecting argument that "actual knowledge of the obligation to file an FBAR" is required); *Bedrosian v. United States*, 912 F.3d 144, 152 (3d Cir. 2018) (willfulness for FBAR purposes "cover[s] not only knowing violations of a standard, but reckless ones as well" (quotation marks omitted)).

This basic misunderstanding of the law undercuts Gentges's opposition. The government need not demonstrate that Gentges *intended* to evade the FBAR reporting requirement in order to prevail on summary judgment—only that he was reckless or willfully blind to the BSA's disclosure requirements. Therefore, no material issues of fact remain: the undisputed record here is more than sufficient for the Court to conclude that Gentges's conduct was at least reckless or willfully blind to the disclosure requirements.

## II.    The Undisputed Evidence Establishes Gentges's Willful Violation of the BSA

### A.    Gentges's 2007 Tax Return Falsely Denied He Maintained Foreign Accounts

Gentges concedes that he submitted a materially inaccurate 2007 tax return, which falsely represented that he had no foreign financial accounts. Def. 56.1 Stmt. ¶¶ 25-26, 31-34.[4] He also

---

[4] Gentges's counterstatement to the government's Rule 56.1 statement does not comply with Local Civil Rule 56.1. In numerous responses, his counterstatement does not cite specific controverting evidence but instead contends that the government's statement is "incomplete" or "misleading," and adds argumentative narrative. *See* Def. 56.1 Stmt. ¶¶ 1-2, 4, 6, 8-9, 13, 18-19, 26-35, 37-42, 44-50. It is improper for a Rule 56.1 counterstatement to "interject arguments and/or immaterial facts in response to facts asserted by [movant], [by] speaking past [movant's] asserted facts without specifically controverting those same facts." *Baity v. Kralik*, 51 F. Supp. 3d 414, 418 (S.D.N.Y. 2014). Paragraphs with improper responses should be deemed admitted.

concedes that he was able to review the return before filing it. *Id.*; Gentges Depo. 109:21-110:19.

Gentges attempts to explain away the false statement in the 2007 return by asserting that he "did not understand how his return was prepared and in reviewing it he did not know what he was looking at beyond the year to year comparison." Def. Br. at 3. He also makes the curious argument that "[n]o one" answered the question falsely denying he had foreign accounts, because his accountant had used computerized tax software to prepare the return he submitted. *Id.* at 13.

Gentges's response is unavailing and legally irrelevant. As a taxpayer, Gentges is "charged with constructive knowledge" of the contents of his 2007 return. *Hayman v. Comm'r*, 992 F.2d 1256, 1262 (2d Cir. 1993). Gentges submitted the return after confirming "[u]nder penalties of perjury" that he had "examined this return and accompanying schedules and statements, and to the best of my knowledge and belief, they are true, correct, and complete." Gentges 2007 Tax Return at D1723 (statement in signature block). This alone suffices to demonstrate a willful violation of the BSA's disclosure requirement, as it evinces that Gentges was at least reckless or willfully blind in falsely denying the existence of foreign accounts in Schedule B. *See Norman*, 942 F.3d at 1116-17; *United States v. Williams*, 489 F. App'x 655, 659 (4th Cir. 2012).

Gentges's false answer cannot be explained by his lack of familiarity with tax law. No expertise is necessary to understand the tax return's question about interests in foreign accounts. *See United States v. Flume*, 390 F. Supp. 3d 847, 857 (S.D. Tex. 2019) ("Schedule B's question about foreign bank accounts is simple and straightforward and requires no financial or legal training to understand."). Indeed, at his deposition, Gentges had no trouble understanding the question or admitting that the answer he gave on the 2007 tax return was false. Gentges Depo. 93:16-95:5; *see* Def. 56.1 Stmt. ¶ 36. Gentges's conduct, as demonstrated by the 2007 tax return,

was thus at least reckless or willfully blind. *See* Gov't Br. at 14-16 (collecting cases).[5]

### B.  Gentges Recklessly Failed to Consult His Accountant or Trust Advisor About Regulatory Requirements for His Swiss Accounts

It is also undisputed that Gentges failed to consult either his longtime accountant or a trust advisor about his UBS accounts. Gentges makes several puzzling arguments about his reasoning for this lack of consultation, but they only underscore his reckless or willful blindness.

Gentges claims he "erroneously believed" the UBS accounts "had no relevance to his U.S. tax reporting," Def. 56.1 Stmt. ¶ 29, and that he "did not inquire" with Richard Surico, his accountant, "because he long believed" that the money in his UBS accounts "had nothing to do with his U.S. life," Def. Br. at 14. Yet Gentges claims that he "did not know anything about U.S. tax preparation." Dkt. No. 37 ("Gentges Decl.") ¶ 11; *see* Def. 56.1 Stmt. ¶¶ 26-27 (stating that Gentges, a "foreign born high school educated tradesman, did not understand all the entries on the return"). Given his conceded lack of *any* knowledge or expertise in this area, his failure to conduct even basic due diligence to confirm his unfounded "belief" about U.S. law establishes that Gentges was reckless or willfully blind to the reporting requirements.[6] *See* Gov't Br. at 17.

Gentges says that he "trusted that Surico knew his craft and did not question" that the returns Surico prepared were "complete." Def. Br. at 3. But Surico, of course, could not submit complete and accurate returns on Gentges's behalf unless he was provided complete

---

[5] Gentges cites *United States v. Clemons*, where the court denied summary judgment in an FBAR case, *see* Def. Br. at 19-22; there, however, the defendant failed to file FBARs but had correctly answered "yes" on Schedule B, which indicated that he may not have sought to conceal his foreign accounts from the government. *Clemons*, No. 18 Civ. 258, 2019 WL 7482218, at *7-8 (M.D. Fla. Oct. 9, 2019). Gentges, by contrast, falsely answered "no" on his return. Def. 56.1 Stmt. ¶ 36.

[6] Gentges's stated beliefs regarding his U.S. tax obligations are also called into question by the UBS documents he signed stating that he was "liable to tax in the USA as a US person." UBS 4959 Records at USA50; UBS 4337 Records at D2160; *see McCracken v. Best Buy Stores, L.P.*, 248 F.R.D. 162, 167 (S.D.N.Y. 2008) ("Parties . . . have a duty to read what they sign.").

information—and Gentges concedes he failed to provide it. *See* Def. 56.1 Stmt. ¶¶ 28-29.[7]

Gentges cites *United States v. Flume* as support for his argument that summary judgment is inappropriate, *see* Def. Br. at 16-18, but *Flume* is easily distinguished. In *Flume*, the defendant claimed he "did in fact tell his tax-return preparer about his UBS account soon after opening it," leaving the possibility that his "failure to disclose the UBS account in his tax returns stemmed from his preparer's negligence" rather than his own "desire to hide the account." *Flume*, No. 16 Civ. 73, 2018 WL 4378161, at *6 (S.D. Tex. Aug. 22, 2018).[8] Not so here, where Gentges "admits that he never disclosed . . . the UBS accounts . . . to Surico." Def. 56.1 Stmt. ¶ 29.

### C.    Gentges's UBS Records Demonstrate His Intent to Avoid IRS Scrutiny, or at Least, Gave Him a Duty to Inquire as to Regulatory Requirements

Gentges also tries to plead ignorance with respect to numerous UBS documents he reviewed and/or signed, *see* Def. Br. at 4-7, some of which facially demonstrate an intent to evade U.S. regulatory oversight, *see, e.g.*, UBS 4959 Records at USA50 (Gentges's instruction stating, "I would like to avoid disclosure of my identity to the US Internal Revenue Service under the new tax regulations."). Others are evidence of the unusual secrecy features of his UBS accounts. *See* Def. 56.1 Stmt. ¶¶ 6, 15; UBS 4959 Records at USA62; UBS 4337 Records at D2166 (Gentges signed documents indicating his UBS accounts were "numbered" accounts);

---

[7] Gentges also makes the odd protest that he did not know many professionals who could have provided him advice on this matter. Def. Br. at 14. But undisputedly, Gentges knew and consulted annually with Surico, who prepared his U.S. tax returns for decades. Gentges Depo. 55:22-56:6. He also admits he consulted an estate-planning attorney. Def. 56.1 Stmt. ¶¶ 21-24. He nonetheless failed to take the obvious step to ask either of these professionals for advice about his Swiss accounts, or even to disclose their existence to them. *Id.* ¶¶ 21-24, 28-29. Gentges was thus "in a position to find out for certain very easily," *Bedrosian*, 912 F.3d at 153, whether his erroneous "belief" was accurate, but failed to do so—rendering his conduct reckless.

[8] After trial, the court found Flume's testimony not credible; instead, it credited his accountants' testimony that "Flume never disclosed the UBS account to them." *Flume*, 390 F. Supp. 3d at 857 (further concluding that a "defendant's failure to inform his accountant about the existence of a foreign account is a strong indicator of a conscious intent to violate the law" (collecting cases)).

Def. 56.1 Stmt. ¶¶ 10-11, 18-19 (Gentges instructed UBS to hold his account-related mail at the bank, and later signed confirmations that he received mail in person and authorized destruction).

Gentges argues that the record is not "clear regarding what [he] actually completed and what he understood about the forms he signed." Def. Br. at 5. But these records speak for themselves, and Gentges provides no evidence showing he lacked awareness. He proposes no compelling alternate meaning (for instance) of his request to "avoid disclosure of [his] identity" to the IRS. Moreover, "individuals are charged with knowledge of the contents of documents they sign—that is, they have 'constructive knowledge' of those contents." *Aboied v. Saudi Arabian Airlines Corp.*, 566 F. App'x 34, 35 (2d Cir. 2014). Gentges's UBS account records are anything but "routine," Def. Br. at 14; rather, they indicate a concerted effort to avoid disclosure of the accounts to the IRS. Even drawing all inferences in Gentges's favor, his awareness of these records and agreement to their terms put him on notice of potential disclosure and tax consequences of the UBS accounts, rendering his conduct at least reckless or willfully blind.

### D.   Gentges's Numerous Cash Withdrawals, Many in U.S. Dollars, Are Further Confirmation of His Willfulness

Gentges's attempts to explain his frequent and substantial cash withdrawals—many of them in U.S. dollars—ignore the relevant evidence. He now claims that he withdrew these funds in either Swiss Francs or Euros, *see* Gentges Decl. ¶¶ 14-15, Def. Br. at 7, but this is inconsistent with his testimony at his deposition, in which he conceded the accuracy of the UBS records, *see* Gentges Depo. 174:10-177:25, 179:11-183:18, 185:12-190:11; Def. 56.1 Stmt. ¶¶ 37-42 (conceding withdrawals were made); *see also Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001) (plaintiff cannot create a material issue of fact by "affidavit opposing summary judgment" that "contradicts [his] own prior deposition testimony"). Moreover, Gentges makes no attempt to explain the numerous notations in the UBS records that specifically indicate that many of the

withdrawals were made in "USD," or U.S. dollars.[9] Indeed, Gentges signed a letter to UBS requesting to withdraw "US $9.500," precluding any argument that he was seeking to withdraw in any other currency. *See* UBS 4337 Records at D2187; UBS 4959 Records at USA281.

### III.    The UBS Bankers' Client Contact Notes Are Admissible, and in Any Event Are Not Necessary to Award Summary Judgment to the United States

Gentges next argues that certain portions of the UBS records are not admissible. Def. Br. at 22-24. The UBS contact records are, however, properly admissible as foreign business records under Rules 803(6) and 902(12) of the Federal Rules of Evidence, and accordingly the Court should consider them in deciding this motion. *See Delaney v. Bank of Am. Corp.*, 766 F.3d 163, 169-70 (2d Cir. 2014). Here, the UBS 4959 Records were accompanied by a business records certification by UBS Legal Counsel Christoph Kurth, *see* UBS 4959 Records at USA10, and the UBS client contact records are additionally authenticated by the certification of Christian Thut, Director of Global Litigation at UBS, *see* Dkt. No. 31 ("Dolinger Decl.") Ex. J ("Thut Cert.").

The UBS certifications satisfy all requirements for admission under the business records exception to the hearsay rule. Fed. R. Evid. 803(6); *see Major League Baseball Properties, Inc. v. Salvino, Inc.*, 542 F.3d 290, 312 (2d Cir. 2008). Moreover, the certifications render the records self-authenticating, as they meet the requirements of Rule 902(12), which addresses foreign business records. As Rule 902(12) requires, the certifications otherwise meet the requirements of Rule 803(6); advance notice was given to defendant; and they were "signed in a manner that, if falsely made, would subject the maker to a criminal penalty in the country where the certification

---

[9] *See, e.g.*, UBS 4959 Records at USA40 (note dated Sept. 2, 2002, reflecting "9.5kUSD" withdrawal), USA41 (note dated Aug. 4, 2003, reflecting "Cash withdrawal 10kUSD"); USA46 (notes dated June 5 and 8, 2007, reflecting "USD 10'000" withdrawal, and Sept. 26, 2007, reflecting "8' USD and 4' CHF [Swiss franc]" withdrawals); USA47 (note dated Sept. 25, 2008, indicating withdrawal of "aprox. [*sic*] USD 90/-) in several currencies (USD, CHF and EUR)").

is signed," Fed. R. Evid. 902(12), as the certifications were made subject to criminal penalty

under the laws of Switzerland, *see* UBS 4959 Records at USA10; Thut Cert. Gentges concedes

the UBS "statements, account opening and maintenance documents[,] and copies of

contemporaneous correspondence or emails," are admissible, and challenges only the

admissibility of the client contact records. Def. Br. at 23. But the U.S. Tax Court recently relied

on a materially identical certification to admit (over the taxpayer's objection) comparable UBS

records, including "emails, letters, third party communications, and summaries of 'client

contacts.'" *See* Order, *Harrington v. Comm'r* ("*Harrington* Order"), No. 13531-18 (T.C. Feb. 7,

2020) [Dkt. No. 33], *available at* https://www.ustaxcourt.gov/InternetOrders/

DocumentViewer.aspx?IndexSearchableOrdersID=316435.

The grounds for Gentges's challenge are both unclear and speculative: Gentges presents

no evidence that could undermine UBS's certification that the records are true copies of contact

notes contemporaneously created in the course of the bank's regularly conducted business

activity. *See* UBS 4959 Records at USA10; Thut Cert. As the court in *Harrington* observed:

> UBS performed for its clients services well beyond those that banks typically
> discharge in connection with ordinary checking accounts. UBS . . . solicited its
> clients' investment goals, and attempted to manage the investments in a manner
> consistent with its clients' objectives. *It is thus not surprising that UBS would
> retain, as part of its regularly conducted business activity, records of
> communications with its clients. See United States v. Johnson*, 971 F.2d 562, 571
> (10th Cir. 1992) ("Bank records are particularly suitable for admission under Rule
> 803(6) in light of the fastidious nature of record keeping in financial institutions,
> which is often required by governmental regulation.").

*Harrington* Order at 3 (emphasis added) (brackets omitted). Gentges's challenge to the

authenticity and admissibility of the UBS client contact notes should likewise be rejected.[10]

---

[10] Alternatively, the Court need not necessarily decide this issue, because the UBS client contact notes are not necessary for the government to prevail on summary judgment. Gentges's tax returns, deposition testimony, and the UBS statements and other core banking records that are undisputedly admissible are sufficient to establish his willfulness, as set forth above in Part II.

**IV.     IRS Assessed Appropriate Penalties for Gentges's Willful FBAR Violations**

Finally, while Gentges concedes that the amount of the FBAR penalty of $679,365 that IRS assessed for the 4959 Account was proper, *see* Def. 56.1 Stmt. ¶¶ 52-54, he challenges the amount of the penalty imposed as to the 4337 Account, *see* Def. Br. at 24-25. IRS properly assessed a penalty of $224,488 for the 4337 Account. *See* Dolinger Decl. Ex. A; Ex. I.

Gentges argues that the penalty for the 4337 Account should not exceed $100,000 because, given the available evidence, IRS relied on the 2007 year-end balance in setting the penalty amount rather than the balance on June 30, 2008, the "violation date." Def. Br. at 24. But Gentges cites no evidence suggesting the account balance decreased substantially between these dates, either due to withdrawals or investment losses. Indeed, Gentges testified that he almost "never" withdrew money from UBS, Gentges Depo. 168:7-20, and bank records only indicate that Gentges began withdrawing extensive sums from the UBS accounts and transferring funds to Migros Bank in September 2008, *see* Def. 56.1 Stmt. ¶ 45. A defendant should not be permitted to limit the penalty to $100,000 for willfully failing to disclose foreign accounts when foreign bank records providing monthly account balance information are unavailable, especially when (as here) there is undisputed evidence of the account balance from just months earlier.

The applicable "arbitrary and capricious" standard for evaluating IRS's calculation of FBAR penalty amounts "is highly deferential and presumes the agency's action to be valid." *Residents for Sane Trash Sols., Inc. v. Army Corps of Eng'rs*, 31 F. Supp. 3d 571, 588 (S.D.N.Y. 2014). The IRS reasonably relied upon the best information available for the 4337 Account—the December 2007 balance of $448,975—because a June 2008 balance was unavailable. *See* FBAR Penalty Lead Sheet at USA776, 793. The penalty for the 4337 Account should thus be upheld.

## CONCLUSION

For these reasons, the Court should grant summary judgment to the United States.

Dated:  July 28, 2020
       New York, New York

                                    Respectfully submitted,

                                    AUDREY STRAUSS
                                    Acting United States Attorney
                                    Southern District of New York

By:     /s/ Samuel Dolinger
                                    SAMUEL DOLINGER
                                    Assistant United States Attorney
                                    86 Chambers Street, 3rd Floor
                                    New York, New York 10007
                                    Tel.:  (212) 637-2677
                                    E-mail: samuel.dolinger@usdoj.gov

11